### CHARLES C. ALGER *vs.* SAMUEL SCOVILLE.

A promise to a debtor to pay his debt to a third person is not a promise to answer for the debt of another, within the statute of frauds, Rev. Sts *c.* 74, § 1, *cl.* 2.

A promise, the leading object of which is a benefit to the promisor, which he did not before enjoy, is not within the statute of frauds, although its effect be to discharge another from an obligation.

By a verbal contract, A. agreed to transfer to S. his stock (being the greater part of the whole stock) in a manufacturing corporation, and a note of the corporation held by him; and S. agreed to convey to A. a certain farm, and to take A.'s interest in the corporation, and to indemnify him against his indorsements on the outstanding notes of the corporation; and A. accordingly transferred his stock and note to S., and received from S. a conveyance of the farm. *Held*, that the promise of S. to indemnify A. against his liability on the notes of the corporation was not without consideration, and was not a promise to answer for the debt or default of another, within the statute of frauds.

ASSUMPSIT.   Writ dated March 22d 1850.   Trial before *Dewey*, J. who made the following report thereof:

" This was an action to recover the amount paid by the plaintiff, as the indorser of five promissory notes, amounting to about four thousand dollars, made by the Dutchess County Iron Company, payable to the order of the plaintiff, and by him indorsed for the accommodation of the said company, and discounted by them at certain banks in the vicinity.   The said notes all arrived at maturity after the 13th of December 1849.

" It appeared in evidence, that on said 13th of December the plaintiff and defendant made a bargain for exchange of property, the plaintiff to transfer to the defendant one hundred and forty five shares of stock in said Dutchess County Iron Company, being the whole of his stock and a major part of the entire stock in said **com**pany, there being but three stockholders, and also to transfer **to** him a note of $3,350 he held against the company; . and the defendant, in consideration thereof, transferred to the plaintiff and conveyed by deed a certain tract of land in the county of Monroe (N. Y.) and the stock on said farm, and, as was testified by one Webb, the bargain then made between the parties was, ' that Scoville was to take the interest Alger had in said company, saving him harmless from all liability, or in other words, to step into his shoes as far as Alger was in any way

nterested in said company;' and said witness further stated that there were certain notes to the amount of some four thousand dollars, (the exact amount he did not remember,) that had been given by said Iron Company to various banks, all which were indorsed by said Alger, and would fall due within four months after that time, (December 13th,) and it was then agreed between the parties that Scoville was to pay and take up all said notes as they severally fell due.' It appeared in evidence, from another witness, who was present at the time of making the transfer by the parties, that the defendant promised that he would take up the notes above described.

" It appeared in evidence that the defendant had failed to fulfil this promise, and that the plaintiff, as indorser, had taken up notes to the amount of four thousand dollars.

" There was no written contract as to the transfer and exchange made and executed by the parties, and no written contract on the part of the defendant, except the deed of the farm and stock thereon. And it was contended by the defendant, that although there was a verbal contract made at the time, and as a part of said agreement to exchange property, to save the plaintiff harmless from all liability as indorser of said notes of said Dutchess County Iron Company, and that he would pay and take up the same, yet the plaintiff was not entitled to recover thereon, unless the contract, or some memorandum or note thereof in writing, was signed by the defendant, or some person thereunto by him lawfully authorized.

" But the court ruled otherwise, and instructed the jury that the contract to indemnify and save harmless the plaintiff against his said indorsements, and to pay and take up said notes, was valid, though not in writing, if the jury were satisfied it was made as above stated. The jury returned a verdict for the plaintiff. If this ruling was wrong, the verdict will be set aside; otherwise, judgment on the verdict."

*C. N. Emerson*, (*I. Sumner* was with him,) for the defendant.

*D. D. Field*, (of New York,) & *J. E. Field*, for the plaintiff.

SHAW, C. J. In order to have a clear view of the question discussed in the present case, which is assumpsit on a special

promise, made by the defendant, it is necessary to understand precisely the facts on which it arises. It appears that when the contract was made, of which the promise sued on was a part, the plaintiff, being the owner of one hundred and forty five shares in the capital stock of an incorporated company, known as the Dutchess County Iron Company, being a major part of the whole stock, and the defendant being the owner of a farm in Monroe county (N. Y.) with the stock thereon, the parties agreed to make an exchange of property. At the same time the plaintiff held a promissory note against the Dutchess County Iron Company for $3,350, and had indorsed the notes of the company, which had been discounted at various banks, and the money received thereon, to the amount of about $4,000, which would all come to maturity and fall due within four months from the time of the contract. The agreement was, that the plaintiff should assign and transfer his shares in the stock of the company, and also indorse over his note against them to the defendant, and that the defendant should, by a good warranty deed, convey the farm in Monroe county, with the stock thereon, to the plaintiff, and indemnify the plaintiff and save him harmless against his said indorsements. This was one entire contract for one entire consideration, the transfer of the shares and the company's note to the defendant, on the one side, being a consideration for the conveyance of the farm and the promised indemnity by the defendant to the plaintiff, on the other. This contract was executed as far as it could be at the time, by the transfer of the shares and the delivery of the note to the defendant, and a conveyance of the farm and stock by the defendant to the plaintiff; but the promise to indemnify the plaintiff against the notes then outstanding was something to be done in future, and was necessarily executory. Afterwards, when the notes outstanding at banks became due, the plaintiff was called on, as indorser, to pay them, and paid them accordingly; and this action is brought on the defendant's promise to indemnify him, and save him harmless from his liability on these notes.

The ground of defence is, that this was a promise to pay the debt of another, and so, by force of the statute of frauds, no

action can be maintained upon it, unless proved by a promise in writing, signed by the party promising.   This is the question.

The precise provision in our statute is as follows : " No action shall be brought to charge any person, upon any special promise to answer for the debt, default or misdoings of another, unless the promise, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized." Rev. Sts. *c.* 74, § 1.   This enactment is in nearly, if not precisely, the same terms with that of 29 Car. 2. *c.* 3 ;  so that adjudications on the construction of the one apply with equal force to the other.

It is not objected that the case is within the other branch of the statute of frauds, on the ground that it was part of one entire transaction, a part of which was for the conveyance of real estate, and on that account the promise could not be given in evidence to support an action, not being in writing.   All that part of the contract, looking to the conveyance of real estate, having been executed, it stood only as a consideration for the executory undertaking relied on in support of this action ; and no part of the contract remains unperformed, except the defendant's promise to indemnify the plaintiff against the payment of the outstanding notes, which is the subject of this suit.

In regard to the clause of the statute relied on, the court are of opinion that the promise is in no sense, in which these terms are used in the statute of frauds, a promise to pay the debt of another ; but it is a promise to the plaintiff, on a consideration moving from the plaintiff to the defendant, to indemnify the plaintiff against a contingent liability, which he is under, as indorser, to certain banks, to pay certain notes given by the Dutchess County Iron Company, as promisors, if they should fail to pay them at maturity.   The Iron Company were not then indebted to the plaintiff, nor would they become indebted to him, until the happening of the contingency of their not paying the notes, and his being called on to pay them.

There being no debt due to the plaintiff from the Iron Company or anybody else, on account of those notes, the promise of the defendant was not a suretyship or guaranty, or responsi-

bility to the plaintiff for any debt or duty due to him, but a mere contract of indemnity against a possible liability. Suppose, instead of a contingent liability, it had been an absolute one, a debt due from himself to a third person; a promise to him, made by a third person, on a valuable consideration moving from him, to pay that debt and save the plaintiff harmless, is not a promise to pay the debt of another, but a promise to pay the plaintiff's own debt, which is equivalent to a promise to pay the money to him, by which he himself could discharge the debt. The promise of the defendant to the plaintiff was, that he should not be called on as indorser to pay the notes, and to save him harmless from such call; and the promise was broken, and the cause of action accrued, when the defendant failed to take up the notes of the company, as they fell due, and permitted the plaintiff to be called on, and compelled to pay them.

In a case in the Queen's Bench, comparatively recent, the court say: " We are of opinion that the statute applies only to promises made to the person to whom another is answerable." *Eastwood* v. *Kenyon*, 11 Ad. & El. 446, and 3 P. & Dav. 282.

The same principle has been adopted in several cases in this commonwealth.

A promise to pay the public taxes which may be levied on an estate sold by A. to B., made by the seller, as one of the terms of sale, need not be in writing, not being a promise by A. to B. to pay a debt due to B. from another person, but to pay a sum which would otherwise be a charge upon the promisee. *Preble* v. *Baldwin*, 6 Cush. 552.

The distinction between the common case, where the promise is designed to secure the debt of another person to the promisee and so a guaranty, and where the promise is made for another and different purpose, is stated, and the cases on the subject are cited, in *Nelson* v. *Boynton*, 3 Met. 396.

That the promise to one to pay his due debt, a debt due from him to another, is not within the statute of frauds, and need not be in writing, was decided in *Pike* v. *Brown*, 7 Cush. 136.

2. But there is another ground on which we are of opinion that this promise was not within the statute of frauds, supposing

it could be construed to be a promise, the effect of which, if performed, would amount to a guaranty that the Iron Company, as promisors on the outstanding notes, should pay those notes, and so save the plaintiff from his liability thereon as indorser, and so, although not a promise to pay the debt of another, yet it might be construed to be a special promise to answer for the default of another, to wit, the Iron Company.

From the earliest period after the statute was passed in England, the judicial construction there has been, not merely that there must be a good consideration; (that is required by the common law to give legal effect to all contracts;) but to require the higher species of evidence, that of writing, where guaranty or suretyship has been the leading or apparent object. But it has been held at the same time, that when the leading and obvious object of the promisor was to induce the promisee to forego some lien, interest, benefit or advantage, held by him, and to transfer that interest, or confer that or some equivalent benefit on the promisor, although the effect may be to discharge another person from an obligation, still it is a new, independent and original contract between the parties, and is not within the statute of frauds required to be in writing. The leading case is *Williams* v. *Leper*, 3 Bur. 1886, where the landlord, having a lien on his tenant's goods for arrears of rent, which goods had been assigned, and were about to be sold by the assignees, entered to distrain, when the broker and agent promised the landlord to pay him his rent, if he would forbear distraining. Though the effect would be to discharge the debt of the tenant, it was held not within the statute of frauds requiring a note in writing. To the same effect is *Castling* v. *Aubert*, 2 East, 325.

This doctrine is fully sustained by the New York cases. It is the third class of cases mentioned by Kent, C. J. in *Leonard* v. *Vredenburgh*, 8 Johns. 39. This third class of cases is, " when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties." This class is not within the statute. This point is confirmed and the cases are fully reviewed by Savage, C. J. in *Farley* v. *Cleveland*, 4 Cow. 432.

The same doctrine is recognized in this commonwealth. The case of *Nelson* v. *Boynton*, 3 Met. 402, after stating the distinction, is summed up thus: " That cases are not considered as coming within the statute, when the party promising has for his object a benefit which he did not before enjoy, accruing immediately to himself; but where the object of the promise is to obtain a release of the person or property of the debtor, or other forbearance or benefit to him, it is within the statute." One of the last cases on the subject substantially affirms the same principle. *Curtis* v. *Brown*, 5 Cush. 488.

Supposing this rule to be well established, we are then to look at the facts of the present case, to see whether it applies.

We have already stated, that we consider the whole as one entire transaction, the conveyance of the farm and the promise of indemnity by the defendant, on the one side, were the consideration of the transfer of shares in the Iron Company and the assignment of the note due the plaintiff from the Iron Company, on the other. Then, what were the relations of the parties before and after the making of this contract. The plaintiff previously was the beneficial owner of more than one half of the entire property and capital of the company, and the only two other shareholders held together an amount of the stock less than that held by the plaintiff. I believe it was stated in the argument, that the plaintiff was president, treasurer, or principal manager of the affairs of the company. But this is not material. His large interest would give him a large influence, if not a controlling power, over the funds and affairs of the company; and whilst holding such interest, he would have a powerful voice, if not a decisive direction, in seeing that the funds of the company should be applied to the payment of its notes, of which he was indorser. Is it to be supposed that, acting on ordinary motives, he would put this power entirely out of his control, and yet leave himself liable to the payment of these notes, as their indorser?

Again; the evidence shows, to use the significant figure of the witnesses, that in regard to the Iron Company the defendant was to step into the plaintiff's shoes. Was he to take the

plaintiff's large interest in the stock and property of the Iron Company, constituting the natural fund out of which these indorsed notes were to be paid, without taking it subject to the incumbrances? Paying the debts of the company, after the defendant had become a shareholder of more than half, would in effect, and to the extent of his interest in those shares, enure to his own direct benefit.

We are therefore of opinion, that this was a new and original contract between these parties, originating in a new considera-tion moving from the plaintiff to the defendant, in effect placing the funds in the hands of the defendant, out of which these notes, in due course of business, would be expected to be paid. The promise was part of a larger transaction constituting an entire contract; and we have no reason to believe, and have no authority to declare, that the plaintiff would have parted with his interest in the company without a simultaneous obligation to be indemnified against his liabilities for the company. For these reasons, we are of opinion that this promise was not within the statute, and that an action will lie upon it, though not made in writing.

3. It was urged, on the part of the defendant, that this prom-ise of indemnity against the outstanding notes was without consideration, because the exchange of property was effected independent of this promise, and that the promise was subse-quent and gratuitous.

We have again recurred to the facts stated in the report, and can perceive in them no color for such an argument. Both witnesses speak of it as one bargain, made at one time, and executed as far as it could then be executed. One of them says, the bargain then made was, that Scoville was to take the interest Alger had in the company, saving him harmless from all liability, or, in other words, to step into his shoes, as far as Alger was in any way interested in the company; the indorsed outstanding notes were referred to, and it was then agreed between the par-ties that Scoville was to pay and take up all said notes as they severally fell due. Another witness, present at the same time. testified to the same fact. The use of the present participle,

" saving him harmless," immediately after the words, " taking his interest in the company," couples the two things inseparably together, as one bargain. The one was a consideration for the other. It was a material and essential part of the entire con-tract, for which the transfer of the shares and the assignment of the company's note were the consideration. The court are therefore of opinion, that the instruction given to the jury was right, and that judgment be entered on the verdict for the plain-tiff. *Judgment on the verdict.*